### Moris Greenhood *vs.* William Carroll & another.

The owner of land, intending to construct a street over it and over adjoining land, took a conveyance of a right of way over the adjoining land by a recorded deed which contained a condition that he should construct the street according to a plan and a profile referred to therein. While making the street according to the plan and profile, he conveyed that part of his land against which he was then making the street, by a deed, bounding it upon the "projected street," together with a right of way over the whole street, as shown upon the plan. In an action by the grantee against the grantor for taking away grave in the construction of the street from that portion of it included in the grantee's deed, *Held,* that the plaintiff took his land with notice of the manner in which the street was to be constructed, and that the defendant was not liable for making it according to the plan and profile referred to in his deed.

TORT in the nature of trespass *quare clausum.* A plan of the premises is given in the margin. The facts are sufficiently stated in the opinion.

ENDICOTT, J. It appears by the bill of exceptions that prior to May 6, 1872, the plaintiff was the owner of an undivided fif-

Bussey Street.

teenth part of a lot of land, called the German Quincy Homestead Land, in common with members of a society styled the

German Quincy Homestead Associates. The legal title to this land was held by Josiah Quincy, in trust for the members of the society. There was also evidence that before May 6, arrangements had been made for the improvement and development of the homestead land, which included Colburn Street, where the alleged trespass was committed, and that Quincy, acting for the associates, was at that time engaged in the work. The execution of the projected improvements required a right of way, or the extension of Colburn Street, from the southerly side of the homestead land to Bussey Street, through land belonging to the Chase heirs. This right of way for the extension of Colburn Street was conveyed, May 6, 1872, to Quincy, by one Churchill, the guardian of the Chase heirs, by a recorded deed describing it as "a full right of way over a way fifty feet wide, being the street marked Colburn Street on a plan," which was recorded and was fully designated in the deed. By a condition in this deed Quincy bound himself to construct Colburn Street, through the Chase land, within four months, according to the plan and a profile referred to showing at what grade, together with other stipulations relating to culverts, and the manner of construction. Quincy commenced the construction of the street through the Chase land, according to his agreement, and on the first of July following had completed it in whole or in part through the Chase land, and had continued it at the same grade twenty-five feet into the homestead land. The plaintiff's interest in the homestead land was set off to him in severalty the latter part of June, 1872, under an award of referees, and July 1, 1872, Quincy, in pursuance of the award, conveyed to the plaintiff the lot so assigned, bounding it "on Colburn Street extended as shown on the plan," being the same plan referred to in the deed from Churchill to Quincy, with a fee to the centre of the street over which Quincy reserved the right of way. The street is also called in the deed a "projected" street. A right of way is also given by the deed to the plaintiff over Colburn Street, through the land of the Chase heirs.

There was also evidence that at the date of this conveyance, the projected street had advanced twenty-five feet in front of the land conveyed to the plaintiff upon the grade determined by the

profile referred to in the deed of Churchill to Quincy. Afterwards, Quincy continued the street by the plaintiff's land at the same grade, and took and carried away gravel from the half of the street the fee of which was in the plaintiff by his deed. For so doing this action of trespass was brought against the defendants, who set up in their answer that they acted under the authority of Quincy, who had the right so to do. No question is made by the plaintiff of the right of Quincy to build Colburn Street over this land, but it is contended that he had no right to make the excavation he did, or to change the natural grade of the land more than was necessary to make the street reasonably safe and convenient. And so the court ruled, unless the jury should find that the plaintiff had knowledge of the intended grade, or had assented to it, or unless the continuance of the street at the same grade it was commenced was the only reasonably practicable way of finishing it. But we think, upon the facts recited which appeared in evidence, and upon the deeds referred to, that the instructions were erroneous. The plaintiff's deed bounds him on a projected street delineated on a plan, which is made part of his deed. The deed gives him a valuable right of way over this street, then in whole or in part constructed upon the stipulated grade to Bussey Street. This right of way is the right conveyed to Quincy by the earlier deed of Churchill referring to plans and profiles of the projected street; and therefore the terms of the record title, by which the plaintiff acquires his right of way, are binding on him as to the character, grade and direction of the projected way through the Chase land, and he takes his right subject to these provisions. These show that the extension of the way, by and over the land of the plaintiff, necessarily involved a change of grade, which had actually been made in part according to the plans and profile when the deed was given. These facts, taken in connection with the deed, show by necessary and reasonable implication what was intended by the term "projected street." *Atkins* v. *Bordman*, 2 Met. 457. The term " projected street " does not, therefore, under these circumstances, and in connection with these deeds and plans, mean a designed, intended or contemplated street merely, but a street already projected and then in process of construction.

We think, therefore, the question for the jury, upon this evidence was, whether the mode of construction, by the defendants, through the plaintiff's land, was a reasonable execution of the plans previously prepared, and referred to in the deed, and in accordance with the plan of construction already commenced, and in part carried out over the plaintiff's land when he took his deed.

As in each instruction given to the jury, the plaintiff's assent was held to be necessary in justification of the defendants, tne decision must be                                          *Exceptions sustained.*

*D. E. Chase,* for the defendants.

*W. Colburn,* for the plaintiff.